# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHAEL MAURICE, | No. 52795-2-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON EMPLOYMENT SECURITY DEPARTMENT, | UNPUBLISHED OPINION |
| Respondent. | |

SUTTON, J. — Michael Maurice appeals from the superior court's order affirming the decision of the commissioner of the Employment Security Department (Department) denying him his unemployment benefits. Maurice argues that the commissioner erred by finding him ineligible to receive unemployment benefits because (1) he did not willfully disregard the employer's interest in a drug-free workplace, (2) he did not violate the standards of behavior that his employer had a right to expect its employees to follow, and (3) he was not insubordinate to his employer's reasonable instruction to obtain a drug test. We disagree and affirm.

## FACTS

### I. BACKGROUND

Maurice began working for the employer, Kaiser Permanente, beginning on March 1, 2009, through August 24, 2017. Maurice worked as a pharmacist.

## II. THE EMPLOYER'S POLICIES

The employer maintains standards of employee conduct. The standards of employee conduct states that

> [v]iolation of [the employer's] standards of employee conduct may, in the discretion of [the employer], result in disciplinary or corrective action, up to and including termination of employment. A wide variety of conduct may violate [the employer's] standards of employee conduct, including but not limited to the following: Lack of cooperation or refusal to follow instructions.

Administrative Record (AR) at 77 (emphasis omitted).

Additionally, the employer maintains a drug and alcohol testing policy. The policy states that "[w]hen reasonable suspicion has been established to indicate an employee is under the influence of alcohol or drugs, the employee, *at the sole discretion of management*, will be asked to provide breath, blood, and/or urine specimens for testing by a third party laboratory." AR at 79 (emphasis added).

## III. MAURICE'S REFUSAL TO SUBMIT TO A DRUG TEST

On August 4, 2017, a customer complained that Maurice seemed incoherent when disbursing the customer's prescription. Maurice's pharmacy manager, Pinar Altayar, asked two nurse managers to observe him. When the nurse managers confirmed the customer's concern, Altayar spoke with Maurice.

Altayar observed Maurice to be disorganized and speaking in a slurred and incoherent manner. She observed him talking extremely fast, speaking in a manner that did not make sense, and exhibiting fast movements as he moved from one station to the next. Based on her observations and the reports from the customer and the nurse managers, Altayar pulled Maurice from the floor and directed him to submit to a drug test.

Altayar intended to bring Maurice into a private meeting room and then direct him to submit to a drug test offsite. Before entering the meeting room, Maurice asked Altayar what was happening. Altayar explained that she was sending him to take a drug test and that a cab was waiting for him outside. Maurice responded that he was refusing the drug test and invoking his *Weingarten*[1] rights.

Maurice claimed that he was invoking his *Weingarten* rights because he wished to have union representation before submitting to a drug test.[2] AR at 118. He claimed that he also believed that the conversation with Altayar gave him the right to union representation. When Altayar confronted Maurice, she did not ask him any questions, but simply directed him to go submit to a drug test.

One of the nurse managers provided Maurice with the employer's policy regarding drug and alcohol testing. Maurice responded, "I will pull my Weingarten rights. I need union representation." AR at 119. Maurice told Altayar, "You're a sweetheart. Regardless if I take a drug test, or do not go, they will fire me." AR at 119. He made additional peculiar statements to Altayar.

Maurice was asked to leave the building and was advised that human resources would be in contact with him. Maurice turned in his badge. He took the lab order for the drug test with him.

---

[1] *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S. Ct. 959, 43 L. Ed. 2d 171 (1975). "*Weingarten* rights" refers to a union member's right to union representation at an investigatory meeting (a meeting that may result in disciplinary action) with the member's employer. *See Weingarten*, 420 U.S. at 260-61.

[2] The parties do not dispute that Maurice was entitled to union representation.

Kayci Parker, a human resources representative, notified the union that Maurice was being directed to submit to a drug test. After leaving the building, Maurice made contact with his union, but he did not submit to a drug test. The lab order expired 48 hours after being issued. Maurice did not report to the testing facility for a drug test before the lab order expired. The lab order was time sensitive due to the employer's concern that Maurice was working under the influence of drugs. The incident occurred on a Friday which made the request for a drug test even more time sensitive.

On August 4, 2017, Maurice was placed on administrative leave, pending an investigation. On August 11, Maurice attended an investigatory meeting at which he had union representation.

## IV. MAURICE'S DISCHARGE

On August 24, Maurice was discharged from his employment with the employer. Maurice was discharged for a violation of the standards of employee conduct, specifically for lack of cooperation or refusal to follow instructions.

After his discharge from employment, Maurice filed for unemployment benefits with the Department. On October 12, the Department granted benefits because, although his employer reported that he was fired, the Department found that his actions did not constitute work-related misconduct.

## V. ADMINISTRATIVE REVIEW

On October 31, the employer appealed the Department's grant of benefits. On January 17, 2018, a hearing was held in front of an administrative law judge (ALJ). The ALJ reversed the Department's determination and found that misconduct had been established.

On February 8, 2018, Maurice petitioned for a commissioner of the Department to review the ALJ's decision reversing the Department's determination. The commissioner expressly adopted the ALJ's findings of fact and conclusions of law and affirmed the ALJ's decision. The commissioner entered the following relevant conclusions of law:

9. Applying the foregoing to the case at hand, the undersigned concludes the employer has proven by a preponderance of the evidence that [Maurice's] actions were in willful disregard of the employer's interest and in disregard of standards of behavior the employer has the right to expect of its employees. An employer has the right to expect its employees to follow reasonable instructions that are in accordance with the employer's policy.

10. In addition, [Maurice's] conduct amounted to insubordination. [Maurice] repeatedly indicated that he would not take a drug test without the presence of a union representative. However, the employer's drug and alcohol policy does not provide for union representation prior to submitting to a drug test. Even though there is no right to union representation provided in the drug and alcohol policy, human resources notified the union that [Maurice] was being asked to submit to a drug test. Additionally, [Maurice] reached out to the union after leaving work, but still did not submit to a drug test. Clearly, a drug test is time sensitive. Ample efforts were made to reach the union on August 4, 2017. Nevertheless, [Maurice] chose not to submit to a drug test in violation of the employer's directive and policy. All things considered, statutory misconduct has been established and claimant is subject to disqualification of benefits pursuant to RCW 50.04.294.

11. By way of dicta, [Maurice] and [the] union may certainly have a claim against the employer under employment law standards. However, the undersigned does not have the authority to rule on whether [Maurice] was lawfully discharged. Under the Employment Security Act, [Maurice] failed to follow a reasonable directive issued by his employer, which amounts to misconduct. It is worth noting that the case law cited by [Maurice] is distinguishable and does not analyze the Employment Security Act. In *Manhattan Beer Distributors, LLC*, 362 NLRB No. 192 at 3 (2015), the National Labor Relations Board was careful to state "our position is *not* that the [employer] was required to postpone indefinitely a drug test of [the employee], but rather that the [employer] was required to afford [the employee] a reasonable period of time to obtain a union representation." ([E]mphasis in original). Also, in *Manhattan Beer Distributors*, the employer indicated a desire to talk with the employee in addition to requesting the drug test.

AR at 121 (footnote omitted) (some alternations in original).

VI. APPEAL TO THE SUPERIOR COURT

On March 21, Maurice appealed to the Thurston County Superior Court. On review, the superior court concluded that the commissioner did not err when she concluded that Maurice was discharged for misconduct because he acted with willful disregard to his employer's interest under RCW 50.04.294(1)(a), violated the standards of behavior the employer had a right to expect under RCW 50.04.294(1)(b), was insubordinate to a reasonable employer instruction or direction under RCW 50.04.294(2)(a). Maurice appeals.

ANALYSIS

I. LEGAL PRINCIPLES

Judicial review of the commissioner's decision is governed by Washington's Administrative Procedure Act (APA)[3]. RCW 50.32.120; RCW 34.05.570. We sit in the same position as the superior court and we apply the APA standards directly to the agency decision and record. RCW 34.05.558; *Courtney v. Emp't Sec. Dep't*, 171 Wn. App. 655, 660, 287 P.3d 596 (2012). We review the decision of the commissioner, not the underlying decision of the ALJ– except to the extent the commissioner's decision adopted any findings of fact and conclusions of law of the ALJ's order. *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 405-06, 858 P.2d 494 (1993). Here, the commissioner adopted all of the ALJ's findings and conclusions. The commissioner's decision is considered prima facie correct, and the party challenging the decision, has the burden of demonstrating its invalidity. RCW 34.05.570(1)(a); *Darkenwald v. Emp't Sec. Dep't*, 183 Wn.2d 237, 244, 350 P.3d 647 (2015).

---

[3] Ch. 34.05 RCW.

Ordinarily, we review the findings of fact for substantial evidence. RCW 34.05.570(3)(e); *William Dickson Co. v. Puget Sound Air Pollution Control Agency*, 81 Wn. App. 403, 411, 914 P.2d 750 (1996). However, Maurice does not challenge any of the findings of fact. Unchallenged findings are verities on appeal. *Darkenwald*, 183 Wn.2d at 244. Thus, here we review de novo whether the commissioner correctly determined the applicable law and then applied the law to the findings. *Tapper*, 122 Wn.2d at 403, 406.

Whether a person's conduct constitutes disqualifying misconduct is a mixed question of law and fact. *Tapper*, 122 Wn.2d at 402. When there is a mixed question of law and fact, we must conduct a three-step analysis. *Tapper*, 122 Wn.2d at 403. First, we determine whether the commissioner's factual findings are supported by substantial evidence. *Tapper*, 122 Wn.2d at 403. Second, we make a de novo determination of the correct law. *Tapper*, 122 Wn.2d at 403. Third, we apply the law to the facts. *Tapper*, 122 Wn.2d at 403. We are not free to substitute our judgment of the facts for that of the commissioner. *Tapper*, 122 Wn.2d at 403.

Under RCW 50.20.066(1), an individual discharged for misconduct connected to his work is disqualified from receiving unemployment benefits. "Misconduct" includes "[w]illful or wanton disregard of the rights, title, and interests of the employer or a fellow employee," and "[d]eliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee." RCW 50.04.294(1)(a), (b). "Misconduct" also includes "[v]iolation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule." RCW 50.04.294(2)(f).

7

## II. WILLFUL DISREGARD OF INSTRUCTIONS OR STANDARDS OF BEHAVIOR

Maurice argues that the Department erred by denying his request for unemployment benefits because substantial evidence does not support the conclusions of law that he willfully disregarded his employer's legitimate interest, that he violated standards of behavior employees were expected to follow, or that he refused to follow a reasonable request to take a drug test. Maurice claims instead that (1) he was required to take a drug test without union representation, (2) he was denied union representation and subsequently terminated, and (3) he would have taken the drug test if he had union representation. The Department argues that it did not err by denying Maurice's request for unemployment benefits because he was asked to submit to a drug test within 48 hours, he was given the lab order, he had the ability to contact the union and take the test that day, and that he never complied. We hold that the commissioner did not err.

Under RCW 50.04.294(1)(a), "misconduct" includes "[w]illful or wanton disregard of the rights, title, and interests of the employer or a fellow employee." An employee acts with willful disregard when he "'(1) is aware of his employer's interest; (2) knows or should have known that certain conduct jeopardizes that interest; but (3) nonetheless intentionally performs the act, willfully disregarding its consequences.'" *Kirby v. Emp't Sec. Dep't*, 179 Wn. App. 834, 844, 320 P.3d 123 (2014) (quoting *Hamel v. Emp't Sec. Dep't*, 93 Wn. App. 140, 146-47, 966 P.2d 1282 (1998)).

Maurice contends that he did not willfully disregard his employer's legitimate interest because the employer had no legitimate interest in requiring him to submit to a drug test without

union representation after he requested representation under *Weingarten*.[4]  We disagree as the conclusions of law are supported by substantial evidence of Maurice's willful disregard of his employer's legitimate interest.

Here, the commissioner entered the following relevant findings:

3.  [Maurice] worked for the employer, Kaiser Permanente, beginning March 1, 2009, through August 24, 2017.  [Maurice] worked as a Pharmacist, earning $69.95 per hour.  This was a full-time, nonunion position.

4.  The employer maintains Standards of Employee Conduct.  "Violations of [the employer's] standards of employee conduct may, in the discretion of [the employer], result in disciplinary or corrective action, up to and including termination of employment.  A wide variety of conduct may violate [the employer's] standards of employee conduct, including but not limited to the following: Lack of cooperation or refusal to follow instructions

5.  Additionally, the employer maintains a Drug and Alcohol Testing policy. The policy states in part, "When reasonable suspicion has been established to indicate an employee is under the influence of alcohol or drugs, the employee *at the sole discretion of management*, will be asked to provide breath, blood and/or urine specimens for testing by a third party laboratory

6.  [Maurice] knew or should have known about the policies.

. . . .

8.  On Friday, August 4, 2017, a customer complained that [Maurice] seemed incoherent when disbursing the customer's prescription.

9.  [Maurice's] pharmacy manager, Pinar Altayar, asked two nurse managers to observe [Maurice].  When the nurse managers confirmed the customer's concern, Ms. Altayar spoke with [Maurice].

10.  Ms. Altayar observed [Maurice] to be disorganized, and have incoherent and slurred speech.  She observed him to talk extremely fast, speak in a manner that did not make sense and exhibit fast movements as he moved from one station to the next.

---

[4] Here, Maurice was not asked to attend an investigatory meeting with his employer.  Maurice does not argue that a drug test should be considered an investigatory meeting.

11. Based on Ms. Altayar's observations and the reports from the customer and nurse managers, Ms. Altayar decided to pull [Maurice] from the floor and direct him to submit to a drug test.

12. Ms. Altayar intended to bring [Maurice] to a private meeting room and then direct him to submit to a drug test offsite.

13. Before entering the meeting room, [Maurice] asked Ms. Altayar what was happening. Ms. Altayar explained that she was sending him to take a drug test and that a cab was waiting for him outside. [Maurice] responded that he was refusing the drug test and invoking his Weingarten rights.

14. [Maurice] invoked his Weingarten rights because he wished to have union representation before submitting to a drug test. Also, [Maurice] believed that the conversation with his manager, Ms. Altayar gave him the right to union representation.

15. When Ms. Altayar confronted [Maurice], she did not ask him any questions but simply directed him to go submit to a drug test.

16. The nurse manager provided [Maurice] with the employer's policy regarding Drug and Alcohol Testing. [Maurice] again responded "I will pull my Weingarten rights. I need union representation."

. . .

19. [Maurice] took the lab orders for the drug test with him.

20. Ms. Parker, [a] human resources representative, notified the union that [Maurice] was being directed to submit to a drug test.

21. After leaving the building, [Maurice] made contact with his union, but he still did not submit to a drug test. The lab order expired 48 hours after it was issued.

AR at 118-119 (citations to record omitted). Because Maurice did not assign error to these findings, they are treated by this court as verities. *Darkenwald*, 183 Wn.2d at 244.

It is undisputed that Maurice was aware of the employer's interest in maintaining a drug and alcohol free workplace consistent with their policies. Maurice also knew that he was obligated to submit to a drug test within the 48 hour window after being provided with the lab order. Reasonable measures were taken to reach the union, but Maurice nonetheless intentionally disregarded the lab order to submit to a drug test within 48 hours. Accordingly, the commissioner's conclusion, that Maurice's conduct was a willful disregard of the employer's interest in maintaining a drug free workplace, is supported by the findings. Therefore, we hold that the commissioner did not err.

### III. INSUBORDINATE BEHAVIOR

Maurice also argues that his behavior was not insubordinate because he did not refuse to follow a reasonable instruction. The Department argues that Maurice's refusal to submit to a drug test within 48 hours was insubordinate behavior because it was a willful refusal to follow the reasonable direction of his employer. We agree with the Department and hold that the commissioner's conclusion, that Maurice's behavior was insubordinate, is supported by the findings. Therefore, we hold that the commissioner did not err.

Again, under RCW 50.04.294(1)(a), "misconduct" includes "[w]illful or wanton disregard of the rights, title, and interests of the employer or a fellow employee." Further, "[i]nsubordination showing a deliberate, willful, or purposeful refusal to follow the reasonable directions or instructions of the employer" is "considered misconduct because [it] signif[ies] a willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee." RCW 50.04.294(2)(a).

11

In determining whether an employee's behavior constitutes disqualifying misconduct, our review is de novo to determine whether the commissioner's conclusions of law are supported by the findings, whether the commissioner properly determined the applicable law, and applied the law to the facts. *Michaelson v. Emp't Sec. Dep't*, 187 Wn. App. 293, 299, 349 P.3d 896 (2015).

The commissioner's findings of fact quoted above are verities because Maurice did not assign error to them. *Darkenwald*, 183 Wn.2d at 244.

The commissioner did not err by concluding that Maurice committed disqualifying misconduct under RCW 50.04.294(2)(a). It is undisputed that the commissioner found, and the record demonstrates, that Maurice received the employer's specific instructions, that the union was notified that Maurice was instructed to submit to a drug test, that Maurice made contact with his union, that the lab order expired 48 hours after being issued, and that Maurice did not report to the testing facility for a drug test before the lab order expired. Thus, the record demonstrates that Maurice received and understood the employer's instructions, but that he made a conscious choice to not follow the instructions.

Accordingly, the commissioner did not err by concluding that Maurice committed disqualifying misconduct by engaging in insubordination by showing a deliberate, willful, or purposeful refusal to follow the reasonable directions or instructions of the employer. Thus, we hold that the commissioner did not err.

No. 52795-2-II

CONCLUSION

We affirm the superior court's order affirming the decision of the commissioner of the Department denying Maurice unemployment benefits.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

CRUSER, J.