# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| DANK'S WONDER EMPORIUM, LLC , | | No. 55627-8-II |
| Appellant, | | |
| v. | | UNPUBLISHED OPINION |
| WASHINGTON STATE LIQUOR & CANNABIS BOARD, | | |
| Respondents. | | |

MAXA, J. – Dank's Wonder Emporium, LLC (Dank's), a previously licensed marijuana retailer, appeals the superior court's affirmance of a final order of the Washington State Liquor and Cannabis Board (LCB). The LCB's order concluded that Dank's committed a violation of the "traceability" regulation, WAC 314-55-083(4), regarding marijuana in its possession and cancelled Dank's marijuana license as a penalty.

Random Vaughn, the owner of Dank's, owned a two-story building in Olympia. The downstairs unit was a licensed marijuana retail store operated by Dank's and the upstairs unit was unlicensed and operated by another of Vaughn's companies. An undercover investigation revealed that potential customers in the retail store were told that they could go upstairs to smoke marijuana for free that then could be purchased downstairs. Dank's entered the marijuana being offered upstairs into the required traceability system as being purchased or as a vendor sample.

After the investigation, the LCB's enforcement division issued a notice of violation and a complaint alleging that Dank's had engaged in traceability, sampling, criminal conduct, and

advertising violations. The enforcement division also recommended license cancellation for only the traceability violation because of aggravating circumstances. Dank's contested the charges.

After an evidentiary hearing, an administrative law judge (ALJ) issued an initial order concluding that Dank's violated all the charges except the traceability charge. On the enforcement division's petition for review, the LCB issued an amended final order concluding that Dank's had committed a traceability violation and imposing cancellation of its license as the penalty. The superior court affirmed the order.

The issue here is not whether Dank's committed sampling, criminal conduct, and advertising violations. Dank's did not challenge the ALJ's conclusions that it committed those violations, which involved penalties that did not include license cancellation. The narrow issue on appeal involves the traceability violation and the cancellation of Dank's license for that violation.

We hold that the LCB's conclusion that Dank's violated the traceability regulation, WAC 314-55-083(4), was not supported by substantial evidence Accordingly, we reverse the LCB's amended final order concluding that Dank's committed a traceability violation and imposing license cancellation as a penalty.[1]

FACTS

*Background*

Dank's was a licensed marijuana retailer located in suite A in the bottom floor of a two-story building in Olympia. Upstairs from Dank's in suite B was a marketing company called Original Investments, LLC. Vaughn was the sole owner of both companies.

---

[1] Because of our holding, we do not address Dank's arguments that the LCB's final order was unconstitutional and that cancellation of its license was an inappropriate penalty under applicable statutes.

In June 2018, the LCB received a report that customers were smoking marijuana samples upstairs from the retail store for which Dank's was licensed. The LCB conducted an undercover investigation that involved four visits to Dank's. On the first two visits, undercover officers went to the Dank's retail store and were told that they could go upstairs to sample marijuana for free, and then come back downstairs to purchase the product. Officers then went upstairs and saw jars of marijuana, confirmed that they could sample the marijuana there, and observed people smoking marijuana. They then returned to the retail store to buy marijuana. Dank's employees referred to the system as "try it before you buy it." Clerk's Papers (CP) at 524, 525.

On the third visit, the undercover officers went directly upstairs and observed several jars of marijuana and a clerk assisting people in smoking marijuana. The clerk said that the marijuana available upstairs was for sale downstairs. The officer then went downstairs to Dank's and purchased marijuana. On the fourth visit, the officer again went directly upstairs and observed marijuana products.

In October, the LCB obtained a search warrant for the upstairs premises because it believed Dank's was conducting a marijuana club in violation of RCW 69.50.465 and unlawfully distributing marijuana in violation of RCW 69.50.401. When executing the search warrant, officers found three jars of marijuana that based on the undercover operations were identified as marijuana that was provided as free samples. An officer then went downstairs to Dank's and confirmed that the same marijuana found upstairs was for sale downstairs. Officers confiscated marijuana samples in quantities in excess of those allowed for personal consumption and per store, as allowed by regulation.

In November 2018, The LCB enforcement division sent Vaughn an administrative violation notice alleging violations regarding (1) traceability, (2) sampling, (3) criminal conduct,

and (4) advertising. In March 2019, the LCB issued a complaint charging Dank's with the same violations. The complaint stated that the standard penalty for the traceability violation was a five day license suspension or a $2,500 fine, but based on aggravating circumstances the penalty here was license cancellation.

*ALJ Decision*

In October 2019, an ALJ conducted an evidentiary hearing in which multiple LCB enforcement officers and Vaughn testified. The officers testified to the facts above regarding the undercover operation.

Vaughn admitted that he took product upstairs for customers to try as part of a try before you buy program. He addressed all of the marijuana found upstairs and referred to exhibits showing that all of the product was recorded in the traceability system as a sale or given to employees and recorded as a vendor sample with a value of $0 in the traceability system. All of the seized marijuana had been checked out of the traceability system and removed from the retail store. Vaughn explained that the same batch of marijuana found upstairs also was present in the retail store because Dank's purchased multiple units of a particular product, but only one of those units would be sold and taken upstairs.

In February 2020, the ALJ issued an initial order. The ALJ made extensive findings of fact, including the following:

> 4.19 Vaughn admitted marijuana samples were provided to customers upstairs, as a part of Dank's 'Try it before you buy it' advertising campaign. Samples were all under one gram in size, in their original containers, not sold and were recorded in the LCB's traceability system with a $0 value prior to being moved upstairs.
> . . . .
>
> 4.23 Vaughn does not dispute the store engaged in a 'Try it Before You Buy It' advertising campaign, offering free samples of marijuana.
> . . . .

4.36  During the search, LCB officers confiscated marijuana samples, along with attached receipts. . . .

4.37  LCB officers also confiscated marijuana products with their attached receipts, paid for by Original Investments.  *All of these products could be traced within the LCB tracking system as either a $0 vendor sample or purchased by Original Investments and cleared from the licensed retail store.*

4.38  All sample product seized in the LCB's search was listed in Dank's traceability as vendor samples with a $0 value.

4.39  Vaughn did not deny numerous vendor samples were recorded in the LCB's traceability system with a $0 value then taken offsite, upstairs to Suite B, to be provided as 'samples' for prospective customers.

CP at 13-15 (emphasis added).

The ALJ affirmed all the charges except the traceability violation.  The ALJ imposed five

day suspensions for the sampling and advertising violations and a 10 day suspension for the

criminal conduct violation, or in the alternative monetary penalties.

Regarding the traceability violation, the ALJ made the following conclusion of law:

5.8 In the present case, the LCB has not established the Appellant violated traceability requirements and engaged in a diversion of marijuana product.  The LCB has not established any of the Appellant's marijuana product went out into the public, was provided to an illicit market, transported across state lines or furnished to minors, criminal enterprises, gangs or cartels.  The upstairs samples confiscated were not sold and receipts were kept for traceability purposes.  The Appellant kept a record of all samples removed from the system and taken upstairs for sampling.  Appellant complied with traceability requirements.  Therefore, the LCB has not established the Appellant violated the traceability requirements pronounced in WAC 314-55-083(4).  As a result, the LCB's 'Complaint No. M-27,126' regarding this issue is **reversed**.

CP at 17.

*LCB Order*

The enforcement division filed a petition for review with the LCB regarding the finding

in the initial order that Dank's had not violated the traceability regulation.  Dank's did not file a

petition for review regarding the ALJ's finding that it committed sampling and advertising violations and engaged in criminal conduct.

The LCB issued an amended final order. The LCB adopted all of the ALJ's findings of fact, including the findings quoted above. However, the LCB struck conclusion of law 5.8 and replaced it with the following:

> In the present case, the LCB has established the Appellant violated traceability. The LCB has established that the Appellant's marijuana product was used illicitly. The upstairs samples were unlawfully provided to the public. Appellant's traceability system entries were inaccurate. Therefore, the LCB has established the Appellant violated the traceability requirements pronounced in WAC 314-55-083(4). As a result, the LCB's 'Complaint No. M-27,126' regarding this issue is affirmed.

CP at 26.

The LCB also determined that cancellation of Dank's license was the appropriate penalty. The LCB's order stated,

> Since the LCB has established the Appellant violated the 'traceability' requirements under WAC 314-55-083(4), a penalty is warranted. Under WAC 314-55-515(5), the [LCB] may impose a different penalty than the standard penalty. The standard penalty for a first violation of this type is a 5-day license suspension, or $2,500 fine in lieu of suspension. Based on aggravating circumstances, including, but not limited to Appellant's diversion of marijuana and multiple, intentional violations, the appropriate penalty is cancellation of the license.

CP at 26.

Dank's petitioned for judicial review in the superior court of the LCB's final order. The superior court affirmed the LCB's order and dismissed the petition for review.

Dank's appeals the superior court's affirmance of the LCB's order.

ANALYSIS

A.    STANDARD OF REVIEW

Our review of an agency decision is governed by the Administrative Procedures Act (APA). RCW 34.05.570(3). In reviewing a claim under the APA, we sit in the same position as

the superior court and reviews the agency's order based on the administrative record. *Pac. Coast Shredding, LLC v. Port of Vancouver*, 14 Wn. App. 2d 484, 501, 471 P.3d 934 (2020).

We may grant relief from the LCB's order based on one of nine reasons listed in RCW 34.05.570(3), including that "[t]he order is not supported by evidence that is substantial when viewed in light of the whole record before the court." RCW 34.05.570(3)(c). The party challenging the agency action bears the burden of demonstrating that the action was invalid. *Pac. Coast Shredding*, 14 Wn. App. 2d at 501.

B.      VIOLATION OF WAC 314-55-083(4)

Dank's argues that the LCB's finding that Dank's violated the traceability regulation, WAC 314-55-083(4), was not supported by substantial evidence. We agree.

1.      Applicable Regulations

The LCB issues three types of licenses. A marijuana producer license allows the licensee to grow and package marijuana for sale at wholesale to other producers and processors. WAC 314-55-075(1). A marijuana processor license allows the licensee to process, package and label marijuana for sale at wholesale to other processors and marijuana retailers. WAC 314-55-077(1). A marijuana retailer license allows the licensee to sell marijuana at retail in licensed retail outlets. WAC 314-55-079(1).

WAC 314-55-096(1) allows producers and processors to provide free vendor samples of marijuana to negotiate a sale on a product that a retail licensee does not carry. Vendor samples can be given to and used by only licensees or employees of licensees who have product ordering or purchasing authority. WAC 314-55-096(1)(a). There are limitations on the amount of vendor samples that can be provided to retailers per month. WAC 314-55-096(1)(c)-(g).

WAC 314-55-096(5) consists of a single heading in bold: "**Retailers may not provide free samples to customers.**"

The traceability regulation, WAC 314-55-083(4), states,

> To prevent diversion and to promote public safety, marijuana licensees must track marijuana from seed to sale. Licensees must provide the required information on a system specified by the WSLCB. All costs related to the reporting requirements are borne by the licensee. Marijuana seedlings, clones, plants, lots of useable marijuana or trim, leaves, and other plant matter, batches of extracts, marijuana-infused products, samples, and marijuana waste must be traceable from production through processing, and finally into the retail environment.

The regulation identifies the information that must be recorded in the LCB's system, including point of sale records. WAC 314-55-083(4)(i). There is no specific subsection that requires retailers to record the distribution of vendor samples to its employees. The two subsections that relate to samples refer to samples provided to another licensee or samples provided to retailers. WAC 314-55-083(4)(*l*), (n). Therefore, the recording of the distribution of vendor samples to employees must fall under the "point of sale" subsection.

### 2. Substantial Evidence

Dank's argues that substantial evidence does not support the LCB's conclusion that Dank's violated WAC 314-55-083(4). We agree.

#### a. Legal Principles

As noted above, we will grant relief if substantial evidence does not support an agency order. RCW 34.05.570(3)(e). "An agency order is supported by substantial evidence if there is 'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" *Hardee v. Dept. of Soc. & Health Servs.*, 172 Wn.2d 1, 7, 256 P.3d 339 (2011) (quoting *Thurston County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 164 Wn.2d 329, 341, 190 P.3d 38 (2008)).

Under RCW 34.05.570(3)(e), the substantial evidence determination is based on the entire record. Here, neither party challenges the ALJ's findings of fact, which the LCB adopted. Unchallenged findings of fact are verities on appeal. *Darkenwald v. Emp't Sec. Dep't*, 183 Wn.2d 237, 244, 350 P.3d 647 (2015).

We review an agency's legal conclusions de novo. *Pac. Coast Shredding*, 14 Wn. App. 2d. at 502. We give "substantial weight to its interpretations of the law when subjects fall within its area of expertise." *Id.* However, "[w]hile we give agencies great deference to their interpretation of rules within their area of expertise, we may substitute our interpretation of the law for that of an agency." *Quinault Indian Nation v. Imperium Terminal Servs., LLC*, 187 Wn.2d 460, 474, 387 P.3d 670 (2017).

### b.    Providing Sold Marijuana to the Public

The LCB claims that marijuana entered in its traceability system as sold to a third party actually was not sold, but instead was taken by Dank's upstairs for its "try it before you buy it" program. However, this argument is refuted by the ALJ's finding of fact, which the LCB adopted, that all of the marijuana that LCB enforcement officers confiscated "could be traced within the LCB tracking system as either a $0 vendor sample or *purchased by Original Investments and cleared from the licensed retail store*." CP at 15. This finding is unchallenged, and therefore is a verity on appeal. *Darkenwald*, 183 Wn.2d at 244.

The LCB provides no authority for the proposition that a marijuana licensee can be charged with a traceability violation based on a third party purchaser's use of the marijuana. In fact, there was testimony from LCB officers that a marijuana retailer has no obligation to track how the purchaser uses the marijuana that the retailer sells.

9

We conclude that there was no traceability violation regarding marijuana that Dank's sold to Original Investments, which took the marijuana upstairs for sampling.

### c.    Providing Vendor Samples to the Public

The LCB emphasizes that vendor samples can be provided only to licensees or employees of licensees under WAC 314-55-096(1)(a), and yet those samples were used by members of the public. The LCB claims that as a result, Dank's input into the system was inaccurate. The LCB argues that entering inaccurate information in the traceability system is a violation of WAC 314-55-083(4).

Initially, the record is somewhat unclear as to whether vendor samples actually were provided to the public. Vaughn testified, "[N]o vendor sample was ever part of any try before you buy . . . It is one gram or a half gram. Like how many people would ever be able to try it? Vendor samples are such a low quantity." CP at 428.

However, the ALJ issued several findings of fact suggesting that samples entered into the traceability system as having a $0 value were provided to customers upstairs. And the ALJ entered an express finding that vendor samples were provided to prospective customers: "Vaughn did not deny numerous vendor samples were recorded in the LCB's traceability system with a $0 value then taken offsite, upstairs to suite B, to be provided as 'samples' for prospective customers." CP at 15. Again, these findings are unchallenged and therefore are verities on appeal. *Darkenwald*, 183 Wn.2d at 244.

There is no question that providing vendor samples to the public for free violated at least two WACs. WAC 314-55-096(1)(a) states that vendor samples can be provided only to licensees or employees of licensees who have product ordering or purchasing authority. And WAC 314-55-096(5) states that marijuana retailers cannot give free samples to customers. But

10

the violation of these regulations is not at issue in this appeal – Dank's does not challenge the ALJ's determination that it committed sampling violations or that it engaged in criminal conduct. The narrow issue here is whether giving vendor samples to customers resulted in a *traceability violation* under WAC 314-55-083(4).

WAC 314-55-083(4) requires that licensees track the movement of marijuana from the time it is grown until the time it is sold at retail. Information that must be provided includes "point-of-sale records." WAC 314-55-083(4)(i). Here, Dank's complied with WAC 314-55-083(4)(i). As noted above, the ALJ made a factual finding, adopted by the LCB, that all of the marijuana that LCB enforcement officers confiscated "could be traced within the LCB tracking system as either *a $0 vendor sample* or purchased by Original Investments *and cleared from the licensed retail store*." CP at 15 (emphasis added). This finding is unchallenged, and therefore is a verity on appeal. *Darkenwald*, 183 Wn.2d at 244.

In addition, the information recorded in the traceability system was not false or inaccurate. Dank's did in fact sell some of the marijuana found upstairs, as recorded. And Dank's did in fact distribute some of the marijuana found upstairs to employees as vendor samples, as recorded. Therefore, the evidence does not support the conclusion that Dank's committed a traceability violation.

The LCB's argument that the information provided regarding the vendor samples was inaccurate is based on the *use* of those samples after they were distributed to employees. But WAC 314-55-083(4) contains no provisions regarding the *use* of vendor samples. The use of vendor samples is addressed in WAC 314-55-096(1)(a).

Dank's may well have violated WAC 314-55-096(1)(a) and other regulations, and the ALJ found that Dank's had committed those violations. But neither the ALJ nor the LCB

imposed license cancellation for those violations, and Dank's did not appeal those violations or the imposed penalties. Cancellation was the penalty only for the alleged traceability violation. And the LCB does not contend that it can now go back and attempt to impose cancellation as the penalty for those other violations.

We conclude that substantial evidence does not support the LCB's conclusion that Dank's violated WAC 314-55-083(4). Accordingly, the LCB's conclusion that Dank's committed a traceability violation and imposition of license cancellation as a penalty must be reversed.

C.    ATTORNEY FEES ON APPEAL

Dank's requests attorney fees on appeal under RCW 4.84.350, arguing that the agency's actions were clearly unjustified. We deny Dank's request for attorney fees.

RCW 4.84.350(1) provides that

> Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.

"Qualified party" includes the sole owner of a corporation only if its net worth does not exceed $5 million. RCW 4.84.340(5).

Here, Dank's has not provided any evidence that it constitutes a "qualified party" under RCW 4.84.350(1). In addition, the LCB's position that the traceability entries were inaccurate because the vender samples were not used as vendor samples is a plausible interpretation of its own regulation and therefore was substantially justified. Accordingly, we deny Dank's request for attorney fees.

CONCLUSION

12

We reverse the LCB's final amended order concluding that Dank's committed a traceability violation and imposing license cancellation as a penalty.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

GLASGOW C.J.

VELJACIC, J.