2016 AUG -8 AM 8:50
COURT OF APPEALS DIV I

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| PORTER LAW CENTER, LLC d/b/a PORTER LAW CENTER, and DEAN DOUGLAS PORTER, | ) ) ) ) | No. 73424-5-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) ) | |
| v. | ) ) | |
| | ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON DEPARTMENT OF FINANCIAL INSTITUTIONS, DIVISION OF CONSUMER SERVICES, | ) ) ) ) ) | |
| | ) | |
| Respondent. | ) | FILED: August 8, 2016 |

SCHINDLER, J. — The Department of Financial Institutions (DFI) filed charges against Dean Douglas Porter and Porter Law Center LLC (collectively, Porter) alleging violations of the Mortgage Broker Practices Act (MBPA), chapter 19.146 RCW. Porter claimed he was exempt from the MBPA because a licensed Washington attorney provided legal services to clients in Washington. Following a hearing, an administrative law judge concluded Porter violated the MBPA by providing residential loan modification services to Washington consumers without a license. DFI issued a final order adopting the findings of fact and conclusions of law in the initial order. DFI ordered Porter to cease and desist; pay $28,886.87 in restitution; pay a fine of $24,000.00; and pay investigative fees. We affirm the DFI order.

## FACTS

Dean Douglas Porter is licensed to practice law in Ohio. Porter owns Porter Law Center LLC (PLC), an Ohio limited liability company located in South Carolina. PLC provides nationwide foreclosure defense services including bankruptcy, loan modification, and debt settlement. Porter is not licensed to practice law in Washington.

On October 3, 2012, the Washington State Department of Financial Institutions (DFI) received an anonymous complaint about a "Payment Reduction Notification" advertisement. The advertisement urged "eligible property" owners in Olympia to use a toll-free telephone number to complete the "prequalification process" for "mortgage relief." The advertisement also listed a website, www.helpmod.com, to obtain "pre-qualification verification" and an address in Utah for "confirmation of eligibility" by mail.

On October 5, a DFI investigator called the number listed on the Payment Reduction Notification advertisement. The person who answered the call as the "Porter Law Firm" in South Carolina said the law firm used a Washington attorney to provide loan modification services to Washington residents. A few days later, another DFI investigator called the same number. The call was answered by the "modification department" of "Porter Law Firm representing Jefferson Consumer Law PLLC."

On October 10, DFI sent Porter Law Firm and Jefferson Consumer Law PLLC a "DIRECTIVE TO PROVIDE DOCUMENTS AND EXPLANATION" for loan modification services. After neither the Porter Law Firm nor Jefferson Consumer Law PLLC responded, DFI issued a subpoena to provide information by November 13.

2

On November 14, 2012, an attorney representing Porter and PLC (collectively, Porter) responded to the subpoena. The attorney signed the response in Porter's name with his address and telephone number.

In response to the question, "Are you currently or have you ever provided or offered to provide loan modification services, including short sale negotiation services, for properties or consumers located in the state of Washington?," Porter answered, "Yes." In response to the question, "Please explain the service provided or offered and the time period provided or offered," Porter states, "Porter Law Center offers legal services relating to residential mortgages." Porter explained, "[I]t is often our professional legal opinion that a loan modification is in the best interests of our clients. In such cases, it would be unethical not to assist clients with these services."

Porter states the "mailer received with the complaint is the only solicitations used by PLC in WA." Porter identified eight Washington residents PLC assisted with residential loan modifications and provided a "copy of a solicitation to Washington consumers." Porter admitted charging each of the eight Washington residents "$3997 [+] a monthly maintenance fee for loan modification services rendered." Porter identified Christopher Jason Mercado as the Washington attorney who provided the residential loan modification services to Washington residents.

Porter claimed the attorney exemption to the Mortgage Broker Practices Act (MBPA), chapter 19.146 RCW, applied and filed a "Claim of Non-Applicability of the Mortgage Broker Practices Act." Porter asserted PLC was not subject to the MBPA because "Porter Law Center assists clients with application for loan modification as part of the licensed practice of law in the State of Washington." DFI investigators attempted

to contact the eight Washington residents Porter identified and "ultimately spoke to two of them: James Adney and Robert Olacio."

On March 25, 2013, DFI filed a "Statement of Charges" against Porter. DFI alleged Porter violated RCW 19.146.200(1) of the MBPA by "engaging in the business of a mortgage broker for Washington residents or property without first obtaining a license to do so" and RCW 19.146.0201(2) and (3) by "engaging in an unfair or deceptive practice toward any person or obtaining property by fraud or misrepresentation."

Porter filed an administrative appeal of the Statement of Charges. Porter argued PLC was "exempt from the MBPA" under former RCW 19.146.020(1)(c) (2009)[1] and WAC 208-660-008(5) because it performed the loan modification services as part of the licensed practice of law in Washington and was not "principally engaged in residential mortgage loan negotiations."

Porter submitted a supplemental response to the subpoena. Porter changed his answer to several questions. But Porter did not change the response that he "provided or offered to provide loan modification services, including short sale negotiation services, for properties or consumers located in the state of Washington." Nor did he change the previous response that "Porter Law Center offers legal services relating to residential mortgages," including "modification applications," and that the "mailer received with the complaint is the only solicitations used by PLC in WA."

DFI financial legal examiners Devon Phelps and Steve Sherman, Washington resident James Adney, and Porter testified at the administrative hearing. Washington attorney Mercado did not appear to testify.

---

[1] LAWS OF 2009, ch. 528, § 2.

4

Adney testified he received an unsolicited call on his cell phone from "Porter Law." The caller stated Adney was behind on his mortgage payments and PLC could work with his mortgage company to get "a loan modification." The caller stated PLC was "operating out of" Utah. Adney testified he called back and hired "Porter Law Center." Adney completed and signed an application, a "Limited Services Retainer Agreement," and a request for information from PLC. The administrative law judge (ALJ) admitted the application, the Limited Services Retainer Agreement, and the request for information into evidence.

The Limited Services Retainer Agreement states PLC will "analyze the case, prepare documents and negotiate with the lender, servicer and/or investor of the first mortgage loan" for the "Borrower's residential property." Paragraph 6 of the Limited Services Retainer Agreement states PLC "may contract or affiliate with co-counsel attorneys in the course of representation of Borrower. . . . Borrower understands and agrees that co-counsel may charge fees in addition to the Firm for services not covered in the scope of this agreement." Paragraph 9 of the Limited Services Retainer Agreement describes the scope of the PLC work as an attempt "to qualify Borrower's first mortgage for work-out programs that are available."

> 9. <u>Limited Scope of Services:</u> The Firm will represent Borrower to the lender, servicer and/or investor(s) of their first mortgage. The scope of representation provided for by this Agreement is limited to attempts to qualify Borrower's first mortgage for work-out programs that are available. This can include:
>     a. Initial consultation and file qualification.
>     b. Preliminary legal review of the file.
>     c. Ongoing legal consultation.
>     . . . .
>     e. Review and analysis of possible predatory lending issues and review of forensic audit if applicable.
>     . . . .

j. Review by local counsel for eligibility and compliance.

k. Attorney review for alternative legal options.

But Paragraph 9 specifically excludes legal services that "are not included within the scope of this Agreement."

> Borrower acknowledges that the following matters are not included within the scope of this Agreement and agrees that, as to these matters, the Firm will not take any action on Borrower's behalf without a written request and a separate agreement and possibly an additional fee.
>
> (a) Motions to revoke a discharge;
> (b) Removal of a pending action in another court;
> (c) Obtaining title reports;
> (d) The determination of real estate tax liens:
> (e) Appeals to the BAP, District Court or Court of Appeals;
> (f) Correcting credit reports;
> (g) Negotiations with Check Systems regarding Borrower;
> (h) Defense of or response to non-mortgage collection activity;
> (i) Motions to dismiss Borrower's bankruptcy case filed by the Trustee, U.S. Trustee, or any creditor;
> (j) Any adversary proceeding filed by the Trustee, U.S. Trustee, or any other party on any basis, including, without limitation, proceedings to determine dischargeability of debts;
> (k) Preparing affirmation agreements, negotiating the terms of reaffirmation agreements proposed by creditors, motions to redeem personal property, and negotiating reaffirmation agreements when Borrower's income is not sufficient to rebut the presumption of undue hardship and special circumstances do not warrant the signing of a reaffirmation agreement;
> (l) Motion to impose or extend the bankruptcy stay;
> (m) Quiet title actions, quit-claim deeds or other conveyance and title issues;
> (n) Other matters not specifically part of the limited scope of this agreement.
>
> See the list attached to the end of this Agreement for details regarding the availability of additional legal services not within the scope of this Agreement.

Adney testified that he communicated with PLC by e-mail and phone. Adney said he "never even heard of" Mercado and never talked to "anyone identifying themselves as Christopher Mercado." Adney testified PLC never told him it was not

licensed to provide loan modification services in Washington. Adney "obtained a modification of his residential loan mortgage" and paid PLC $3,476.

The ALJ admitted into evidence copies of the retainer agreements for the other Washington residents. The description of the scope of the services was the same as the services set forth in the Limited Services Retainer Agreement signed by Adney.

Porter testified PLC represented eight clients in Washington but he had "no idea" how the eight Washington clients learned about PLC. Porter "presumed Mr. Mercado was responsible for soliciting the eight Washington consumers." Contrary to the responses to the DFI subpoena, Porter testified PLC did not engage in "any marketing solicitations."

> [PORTER]   I don't have any marketing solicitations.
> Q                No marketing solicitations? So it's your testimony it's not your flier?
> A                That is correct.

Porter testified the toll-free number listed on the Payment Reduction Notification advertisement was "not our national number" and was "[n]ot a number that I am familiar with." Porter said the www.helpmod.com Internet address listed on the advertisement did not belong to PLC. Porter "presumed that Mr. Mercado provided legal services to these eight Washington consumers" based on the "Customer Notes" Mercado submitted to PLC.

The ALJ admitted the Customer Notes from Mercado into evidence as exhibits. The Customer Note entries "are blank, and the time entry reflects zero (0) minutes billed." The only billing records "in evidence" show "a charge of $50" in late 2012 for unspecified "tasks" Mercado performed for PLC clients. Porter testified he was unaware of whether $50 was a reasonable fee for loan modification services.

7

The ALJ concluded Porter violated RCW 19.146.200(1) of the MBPA by "offering and providing eight Washington customers residential loan modification services without possessing a mortgage broker or loan originator license." The ALJ rejected Porter's testimony that Mercado provided legal services to the eight Washington clients. The ALJ found there was "insufficient evidence on the record to establish what work, if any, that Mr. Mercado performed or oversaw," and the "weight of the evidence in the record establishes that PLC staff outside of Washington performed most if not all of the loan modification work for the eight Washington consumers at issue." The ALJ found that because the loan modification services PLC provided were not "incidental to, or a small part of, other legal representation" and instead were "the primary purpose of the representation," the MBPA attorney exemption did not apply.

The ALJ concluded Porter violated RCW 19.146.0201 of the MBPA by engaging in "deceptive practices toward eight Washington consumers." The ALJ found PLC "advertised residential loan modification services to Washington consumers via mailer, telephone, and the internet" without disclosing it was "not licensed in Washington as mortgage brokers, loan originators, or attorneys." The ALJ found Porter's testimony that he did not engage in the solicitation of Washington residents not credible. "Mr. Porter on two occasions told [DFI] in the Directive that the solicitation belonged to [Porter and PLC]." The ALJ found there was "no evidence" PLC told consumers that Mercado, rather than PLC, would represent them or provide loan modification services.

The ALJ entered extensive and detailed findings of fact and conclusions of law and an initial order. On July 16, 2014, DFI entered a final order adopting the ALJ findings and conclusions. DFI ordered PLC to "cease and desist from further violation

8

of Chapter 19.146 RCW" and ordered Porter and PLC to pay $28,886.87 in restitution, a $24,000.00 fine, and investigative fees. Porter appealed. The superior court affirmed the DFI final order.

## ANALYSIS

Porter appeals the superior court order affirming the DFI decision. The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs judicial review of a final administrative decision. Nationscapital Mortg. Corp. v. Dep't of Fin. Insts., 133 Wn. App. 723, 737, 137 P.3d 78 (2006). When reviewing agency action, this court "sits in the same position as the superior court, applying the standards of the WAPA directly to the record before the agency." Tapper v. Emp't Sec. Dep't., 122 Wn.2d 397, 402, 858 P.2d 494 (1993); Brown v. Dep't of Commerce, 184 Wn.2d 509, 544, 359 P.3d 771 (2015).[2]

We review the agency's findings of fact for substantial evidence. Raven v. Dep't of Soc. & Health Servs., 177 Wn.2d 804, 817, 306 P.3d 920 (2013); Nationscapital, 133 Wn. App. at 737. Substantial evidence is "evidence of a 'sufficient quantity . . . to persuade a fair-minded person of the truth and correctness' of the agency action." Campbell, 180 Wn.2d at 571[3] (quoting Port of Seattle v. Pollution Control Hearings Bd., 151 Wn.2d 568, 588, 90 P.3d 659 (2004)). "We will not weigh the evidence or substitute our judgment regarding witness credibility for that of the agency." Nationscapital, 133 Wn. App. at 738; Port of Seattle, 151 Wn.2d at 588. We treat findings of fact labeled as conclusions of law as findings of fact. Riley-Hordky v. Bethel

---

[2] Therefore, we review the decision of the agency, not the superior court. Campbell v. Emp't Sec. Dep't, 180 Wn.2d 566, 571, 326 P.3d 713 (2014).

[3] Internal quotation marks omitted.

Sch. Dist., 187 Wn. App. 748, 759, 350 P.3d 681 (2015); Willener v. Sweeting, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

Unchallenged findings are verities on appeal. Nationscapital, 133 Wn. App. at 738; Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 244, 350 P.3d 647 (2015). We review de novo an agency's "conclusions of law and its application of the law to the facts." Raven, 177 Wn.2d at 817; Tapper, 122 Wn.2d at 402. Because Porter does not assign error to any of the findings of fact, we treat the findings of the ALJ that were adopted by DFI as verities on appeal. RAP 10.3(h); Darkenwald, 183 Wn.2d at 244; Nationscapital, 133 Wn. App. at 738; cf. Ferry County v. Growth Mgmt. Hearings Bd., 184 Wn. App. 685, 725, 339 P.3d 478 (2014). Although the ALJ labeled some findings of fact as conclusions of law, we treat those conclusions as findings of fact. Willener, 107 Wn.2d at 394.

Porter contends the attorney exemption to the MBPA applies and substantial evidence does not support the conclusion that PLC engaged in unlicensed activity in violation of RCW 19.146.200(1) or deceptive practices in violation of RCW 19.146.0201.

Under RCW 19.146.200(1), a person "may not engage in the business of a mortgage broker or loan originator without first obtaining and maintaining a license under this chapter" unless specifically exempt under RCW 19.146.020. Under the MBPA, "person" means "a natural person, corporation, company, limited liability corporation, partnership, or association." Former RCW 19.146.010(17) (2010).[4] Former RCW 19.146.010(11)(c) defines "loan originator" to include:

> [A] natural person who for direct or indirect compensation or gain or in the expectation of direct or indirect compensation or gain performs residential

---

[4] LAWS OF 2010, ch. 35 § 13.

10

mortgage loan modification services or holds himself or herself out as being able to perform residential mortgage loan modification services.[5]

RCW 19.146.010(21) defines "residential mortgage loan modification services."

RCW 19.146.010(21) states:

> "Residential mortgage loan modification services" includes negotiating, attempting to negotiate, arranging, attempting to arrange, or otherwise offering to perform a residential mortgage loan modification. "Residential mortgage loan modification services" also includes the collection of data for submission to any entity performing mortgage loan modification services.

Porter argues DFI erred in concluding the attorney exemption to RCW 19.146.200(1) did not apply to PLC and improperly placed the burden of proof on Porter.

Under former RCW 19.146.020(1)(c), an attorney licensed to practice law in Washington who is "not principally engaged in the business of negotiating residential mortgage loans" is exempt from the MBPA. Former RCW 19.146.020(1) provides:

> The following are exempt from all provisions of this chapter:
>
> . . . .
>
> (c) An attorney licensed to practice law in this state who is not principally engaged in the business of negotiating residential mortgage loans when such attorney renders services in the course of his or her practice as an attorney.[6]

---

[5] Emphasis added.

[6] The legislature amended RCW 19.146.020(1)(c) in 2013. LAWS OF 2013, ch. 30, § 2. RCW 19.146.020(1) now provides:

The following are exempt from all provisions of this chapter:

. . . .

(c) An attorney licensed to practice law in this state. However, (i) all mortgage broker or loan originator services must be performed by the attorney while engaged in the practice of law; (ii) all mortgage broker or loan originator services must be performed under a business that is publicly identified and operated as a law practice; and (iii) all funds associated with the transaction and received by the attorney must be deposited in, maintained in, and disbursed from a trust account to the extent required by rules enacted by the Washington supreme court regulating the conduct of attorneys.

WAC 208-660-008(5)(a) provides that "an attorney licensed in Washington" is exempt from the MBPA under RCW 19.146.020(1)(c) if the mortgage broker activities performed by the attorney "are incidental to your professional duties as an attorney."[7]

There is no dispute Porter is not licensed to practice law in Washington. Porter asserts that because Washington attorney Mercado provided mortgage loan modification services for PLC Washington clients, DFI erred in concluding the exemption did not apply. The record supports the DFI conclusion that the "weight of evidence establishes that [PLC], not Mr. Mercado, performed these services for the eight consumers at issue."

Adney testified he communicated only with PLC paralegals and never heard of Mercado. Porter testified he did not know what work Mercado provided to the Washington clients and Porter, not Mercado, assigned work on the cases to the PLC paralegals.

The unchallenged findings establish the loan modification services Porter provided were not "incidental to, or a small part of, other legal representation" and were

---

[7] WAC 208-660-008(5) states:

**As an attorney, must I have a mortgage broker or loan originator license to assist a person in obtaining or applying to obtain a residential mortgage loan in the course of my practice?**

(a) If you are an attorney licensed in Washington and if the mortgage broker activities are incidental to your professional duties as an attorney, you are exempt from the Mortgage Broker Practices Act under RCW 19.146.020(1)(c).

(b) Whether an exemption is available to you depends on the facts and circumstances of your particular situation. For example, if you hold yourself out publicly as being able to perform the services of a mortgage broker or loan originator, or if your fee structure for those services is different from the customary fee structure for your professional legal services, [DFI] will consider you to be principally engaged in the mortgage broker business and you will need a mortgage broker or loan originator license before performing those services. A "customary" fee structure for the professional legal service does not include the receipt of compensation or gain associated with assisting a borrower in obtaining a residential mortgage loan on the property.

(Boldface in original.)

"the primary purpose of the representation." The Limited Services Retainer Agreement describes the scope of PLC work on behalf of the Washington clients as "attempts to qualify Borrower's first mortgage for work-out programs that are available," and explicitly lists legal services that "are not included within the scope of this Agreement." The unchallenged findings and the administrative record establish the MBPA attorney exemption under former RCW 19.146.020(1)(c) did not apply.

Porter also argues DFI erred in placing the burden on Porter to prove the attorney exemption applied. Because the unchallenged findings and the administrative record establish the attorney exemption does not apply, Porter cannot show prejudice. RCW 34.05.570(1)(d); Densley v. Dep't of Ret. Sys., 162 Wn.2d 210, 217, 173 P.3d 885 (2007).

The unchallenged findings support the DFI conclusion that PLC acted as a loan originator without a license in violation of RCW 19.146.200(1). Porter offered residential loan modification services and received compensation for those services. While Porter was "admittedly not licensed as [a] mortgage broker[ ] or loan originator[ ] in the state of Washington," PLC "held [itself] out publicly to at least eight Washington consumers as being able to perform the services of a mortgage broker or loan originator." The findings establish the Washington consumers "paid PLC to negotiate, attempt to negotiate, arrange, or attempt to arrange a residential loan modification for them."

Porter contends substantial evidence does not support finding PLC held itself out as being able to provide loan modification services directly to Washington consumers and the DFI decision is arbitrary and capricious.

The unchallenged findings support the conclusion that Porter violated former RCW 19.146.0201 (2009)[8] of the MBPA. Former RCW 19.146.0201 states, "It is a violation of this chapter for a loan originator or mortgage broker required to be licensed under this chapter to: . . . (2) Engage in any unfair or deceptive practice toward any person." The findings establish PLC "advertised residential loan modification services to Washington consumers via mailer, telephone, and the internet." The Payment Reduction Notification flyer, Adney's testimony, and the PLC website support this finding.

The unchallenged findings establish there is "no evidence" that PLC "disclosed to Washington consumers, during such advertising, that they were not licensed in Washington as mortgage brokers, loan originators, or attorneys," or that PLC "ever told Washington consumers that Washington attorney Christopher Mercado would represent them or provide them loan modification services."

Neither the flyer nor the PLC website mention PLC is not licensed as a mortgage broker or loan originator in Washington or that Washington attorney Mercado would provide the loan modification services for PLC's Washington clients.

"The scope of review under an arbitrary and capricious standard is very narrow, and the party asserting it carries a 'heavy burden.' " Ass'n of Wash. Spirits & Wine Distribs. v. Liquor Control Bd., 182 Wn.2d 342, 359, 340 P.3d 849 (2015)[9] (quoting King County Pub. Hosp. Dist. No. 2 v. Dep't of Health, 167 Wn. App. 740, 749, 275 P.3d

---

[8] LAWS OF 2009, ch. 528, § 3.
[9] Internal quotation marks omitted.

1141 (2012)). "An agency's decision is arbitrary and capricious if the decision is the result of willful and unreasoning disregard of the facts and circumstances." Overlake Hosp. Ass'n v. Dep't of Health, 170 Wn.2d 43, 50, 239 P.3d 1095 (2010). " '[W]here there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.' " Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n, 148 Wn.2d 887, 905, 64 P.3d 606 (2003)[10] (quoting Rios v. Dep't of Labor & Indus., 145 Wn.2d 483, 501, 39 P.3d 961 (2002).

The decision that PLC engaged in deceptive practices in violation of former RCW 19.146.0201 is supported by the unchallenged findings and the record, and the decision is not arbitrary or capricious.

Porter claims the ALJ "erroneously made credibility determinations." We disagree. An ALJ is entitled to determine the weight given to conflicting evidence. See Port of Seattle, 151 Wn.2d at 588; Beatty v. Wash. Fish & Wildlife Comm'n, 185 Wn. App. 426, 449, 341 P.3d 291 (2015); William Dickson Co. v. Puget Sound Air Pollution Control Agency, 81 Wn. App. 403, 411, 914 P.2d 750 (1996). Credibility determinations made by a presiding officer at an administrative hearing "are not subject to appellate review." Dep't of Health Unlicensed Practice Program v. Yow, 147 Wn. App. 807, 820, 199 P.3d 417 (2008).

Porter also claims the ALJ erred in admitting hearsay evidence. We disagree. Under the WAPA, the Rules of Evidence are "guidelines for evidentiary rulings." RCW

---

[10] Internal quotation marks omitted.

34.05.452(2). The WAPA expressly provides that hearsay evidence is admissible if "in the judgment of the presiding officer it is the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their affairs." RCW 34.05.452(1). "Findings may be based on such evidence even if it would be inadmissible in a civil trial." RCW 34.05.461(4).

Porter contends the ALJ erred in allowing the DFI investigators to testify that Washington resident Robert Olacio filed a complaint against PLC. But Porter provided the names of the PLC Washington clients, including Olacio, and identified how much he charged each client. Porter also asserts the ALJ abused its discretion by admitting evidence about the Washington clients DFI was not able to contact. Porter argues the evidence was irrelevant and "highly prejudicial because it suggested a pattern of conduct on behalf of PLC." The ALJ did not abuse its discretion in admitting the evidence. Whether Porter provided loan modification services to Washington residents outweighed any prejudice.

Porter challenges the $24,000 fine imposed by DFI. Porter argues DFI "arbitrarily fabricated a fine amount" and failed to follow prescribed procedures because it "deviated from its usual practice of using a fine matrix."

Former RCW 19.146.220(2)(c) (2006)[11] authorized DFI to impose fines for "[a]ny violation of this chapter." WAC 208-660-530(6) gives DFI the discretion to impose a fine of up to $100 for each violation. "Each day's continuance of the violation is a separate and distinct offense." WAC 208-660-530(6). Neither RCW 19.146.220 nor WAC 208-660-530 requires DFI to utilize a "fine matrix."

---

[11] LAWS OF 2006, ch. 19, § 13.

The unchallenged findings support the $24,000 fine. The findings establish PLC "worked for at least one month on each of their eight Washington clients' residential loan modifications." DFI calculated the fine at 30 days per customer. The decision to impose a fine of $3,000 for each of the eight Washington clients was not arbitrary and capricious or a failure to follow a prescribed procedure.

Porter also challenges the order to pay $28,886.87 in restitution. But the record shows Porter admitted the eight PLC Washington clients paid a total of $28,886.87.

Porter asserts the MBPA violates the separation of powers by encroaching on the Supreme Court's authority to regulate the practice of law. We disagree.

The separation of powers doctrine " 'serves mainly to ensure that the fundamental functions of each branch remain inviolate.' " Brown v. Owen, 165 Wn.2d 706, 718, 206 P.3d 310 (2009) (quoting Carrick v. Locke, 125 Wn.2d 129, 135, 882 P.2d 173 (1994)). In determining whether a particular action violates the separation of powers doctrine, we look to " 'whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another.' " Brown, 165 Wn.2d at 718[12] (quoting Carrick, 125 Wn.2d at 135). Although "the regulation of the practice of law is within the sole province of the judiciary," application of consumer protection laws such as the MBPA to attorneys "does not trench upon the constitutional powers of the court to regulate the practice of law." Bennion, Van Camp, Hagen & Ruhl v. Kassler

---

[12] Internal quotations omitted.

Escrow, Inc., 96 Wn.2d 443, 453, 635 P.2d 730 (1981); Short v. Demopolis, 103 Wn.2d

52, 65, 691 P.2d 163 (1984).

We affirm the final decision and order of DFI.

WE CONCUR: