# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>ZACKERY CHRISTOPHER TORRENCE,<br><br>Petitioner. | No. 56294-4-II<br><br>UNPUBLISHED OPINION |

LEE, J. — Zackery C. Torrence filed a personal restraint petition (PRP) seeking relief from personal restraint imposed after a jury found him guilty of four counts of first degree child molestation, three counts of first degree rape of a child, one count of second degree rape, and one count of indecent liberties with forcible compulsion committed against a minor victim, A.A.[1] Torrence seeks relief based on the following alleged errors: (1) the trial court excluded evidence of A.A.'s prior sexual assault, (2) the trial court excluded evidence of A.A.'s prior theft incidents, (3) the trial court erroneously allowed an expert witness to testify, (4) he received ineffective assistance of counsel because his attorney did not object to an anatomical diagram used as illustrative evidence, and (5) the prosecutor committed misconduct by using an anatomical diagram and by eliciting testimony from the expert witness.

We do not address Torrence's claim regarding the exclusion of evidence of A.A.'s prior sexual assault because Torrence failed to provide an offer of proof. We hold that the trial court

---

[1] This opinion uses initials instead of names to protect the privacy of the minor victim. *See* Gen. Order 2023-2 of Division II, *General Order re Victim Initials* (Wash. Ct. App.), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2023-2&div=II.

did not err by excluding evidence of A.A.'s prior theft incidents or by allowing the expert witness testimony. We also hold that Torrence did not receive ineffective assistance of counsel and the prosecutor did not commit misconduct. Accordingly, we deny Torrence's PRP.

FACTS

In 2011, 11-year-old A.A. stayed with her mother and her mother's boyfriend, Torrence, for six to eight weeks. *State v. Torrence*, No. 52432-5-II, slip op. at 1, 3 (Wash. Ct. App. Oct. 6, 2020) (unpublished),[2] *review denied*, 196 Wn.2d 1042 (2021). In 2016, A.A. alleged that Torrence had sexually abused her during her stay in 2011. *Id*. at 3-4. Because several years had passed between the sexual abuse and the disclosure, A.A. did not undergo a sexual assault examination. *Id*. at 4.

The State charged Torrence with four counts of first degree child molestation, three counts of first degree rape of a child, one count of second degree rape, and one count of indecent liberties with forcible compulsion. *Id*. The State also alleged that Torrence used his position of trust or confidence to facilitate the commission of the charged crimes. *Id*.

A.     MOTIONS IN LIMINE

1.     A.A.'s Prior Theft Incidents

Before trial, the State moved to exclude evidence of A.A. shoplifting an icing packet from a store sometime before July 2016, taking money from her grandmother in 2016, taking money from her father's wife's wallet sometime before mid-2016, and taking cosmetics from her aunt. The State argued that any evidence of A.A.'s prior theft incidents had minimal relevance because

---

[2] https://www.courts.wa.gov/opinions/pdf/D2%2052432-5-II%20Unpublished%20Opinion.pdf.

the incidents were remote in time and because of A.A.'s age at the time of the incidents. Torrence asked the trial court to reserve ruling on the exclusion of A.A.'s prior theft incidents until after A.A. testified, arguing that evidence of the incidents could be admissible depending on A.A.'s testimony.

Although the trial court indicated that it was inclined to grant the motion to exclude because the evidence was irrelevant, and even if it was relevant, the prejudicial effect outweighed any relevance, the trial court reserved ruling on the exclusion of A.A.'s prior theft incidents. The trial court stated that it would take a recess after A.A.'s direct examination to allow the defense to make an offer of proof based on the nature of A.A.'s testimony, at which time the trial court would rule.

2.  A.A.'s Prior Sexual Assault

The State also moved to exclude evidence that A.A. was sexually abused by one of her mother's prior boyfriends and stated that A.A. would testify that she had no recollection of sexual abuse by anyone other than Torrence. Torrence argued that evidence of the prior sexual assault could be relevant to show why A.A. had precocious knowledge and was able to describe events of sexual abuse even if Torrence did not commit the offenses. The State responded that, while A.A.'s sister stated that A.A. had previously told her that A.A. had been sexually abused by another man, A.A. now denied having memory of any other sexual abuse. The State further argued that the parties did not know any facts about the other prior sexual abuse.

The trial court stated that there was "insufficient basis for [it] right now" on the admissibility of the prior sexual assault. Verbatim Rep. of Proc. (VRP) (July 9, 2018) at 88. The trial court ruled that the defense would have to give the court an offer of proof showing that the prior sexual assault occurred and explaining why the evidence was relevant and significant. The

trial court then stated, "So at this point I'm going to grant—to the—other sexual—. Subject to an offer of proof." VRP (July 9, 2018) at 88.[3]

### 3. Dr. Copeland's Testimony

Torrence moved to exclude testimony from one of the State's witnesses, Dr. Kimberly Copeland, a child abuse pediatrician. The State had previously filed a notice of expert testimony from Dr. Copeland. In this notice, the State said that Dr. Copeland would testify regarding:

> (1) the anatomy of the female external genital organ including the fact that it is possible for penile-vaginal sexual intercourse to occur between an adult male and an eleven-year-old female; (2) the fact that medical professionals rarely observe physical injury or physical signs from past sexual abuse of minor children and adolescents during medical examinations of the genitals, vagina, and/or anus; (3) statistics about this fact; and (4) the medical reasons for this fact.

Clerk's Papers (CP) (direct appeal record) at 44;[4] Br. of Resp't Appx. B at 1. Torrence argued that Dr. Copeland's testimony should be excluded because, while Dr. Copeland regularly examined minor children who experienced sexual abuse, Dr. Copeland did not meet or examine A.A. or review any of A.A.'s medical records or history.

The State responded that A.A. would testify about experiencing pain and bleeding after the sexual abuse, and Dr. Copeland would testify that pain and bleeding is consistent with injuries from sexual abuse. The State argued that a lay person might think a doctor could look at female genitalia and be able to tell whether the person experienced sexual abuse. The State also argued

---

[3] The record does not show the defense submitting an offer of proof or seeking to admit evidence regarding this prior sexual assault.

[4] The record in Torrence's direct appeal, No. 52432-5-II, was transferred to this PRP by this court's ruling on February 1, 2022. Citations to the record from Torrence's direct appeal are designated with the parenthetical "direct appeal record."

that the defense would likely argue in closing that the State did not have any physical evidence from a sexual assault examination, so Dr. Copeland's testimony would "short-circuit that argument before it develops" and explain some potential weaknesses in the State's case. VRP (July 9, 2018) at 107.

The trial court stated that the jury might not know a lot about human sexuality and specifically about sexual acts occurring between adults and children. Based on this potential lack of knowledge, the trial court found that Dr. Copeland's testimony regarding the possibility of sexual intercourse between an adult male and 11-year-old child was relevant. The trial court also noted that a reasonable juror would ask why no sexual assault examination was performed and why there was no physical evidence. The trial court ruled that Dr. Copeland's testimony that there would generally not be physical evidence from a sexual assault examination in this situation was relevant to the jury's determination of whether a rape occurred. The trial court denied the defense's motion to exclude Dr. Copeland's testimony.

B.      TRIAL

At Torrence's jury trial, the State called numerous witnesses including A.A., A.A.'s family members, expert witnesses, and a law enforcement officer involved in the investigation.

1.      A.A.'s Testimony

Just before A.A. testified, the State asked the trial court for a "refresher" of its ruling regarding A.A.'s prior theft incidents. VRP (July 10, 2018) at 341. Defense counsel said its notes showed that the defense would have to give the court notice if the defense planned to bring in evidence regarding the prior theft incidents, and there would have to be a proper foundation.

5

The trial court stated that the prior theft incidents were remote in time from the alleged crime, to which the defense responded that the thefts were not too remote in time to be relevant because they occurred shortly before A.A.'s disclosure and within the year and a half before trial. The trial court then articulated additional reasons for its ruling and stated that, while adults can be impeached by certain prior crimes involving dishonesty, "that's not the way it is for juveniles in most situations." VRP (July 10, 2018) at 345. The trial court ruled that the evidence had "some degree of relevance" but that potential confusion of the issues and prejudice to A.A. outweighed any relevance under ER 402. VRP (July 10, 2018) at 345.

A.A. then testified extensively about Torrence sexually abusing her. *Torrence*, slip op. at 4. A.A. also testified that it hurt and burned when Torrence penetrated her and that she sometimes found blood in her underwear after the incidents of abuse. A.A. also testified that it stung when she urinated after the first rape.

On cross-examination, the defense impeached A.A. on some details of the abuse and identified inconsistencies in A.A.'s testimony. The defense also solicited testimony regarding A.A.'s potential motivations for fabricating the abuse, including A.A.'s anger toward her mother and inter-family conflict resulting from A.A.'s behavioral problems. *Id*. at 10-11.

After A.A.'s testimony, the defense asked the trial court if it could solicit testimony from other witnesses regarding A.A.'s prior theft incidents under ER 608. The defense argued that the theft incidents were acts of dishonesty and the whole family, including several witnesses, knew that the incidents occurred. The defense further argued that some of the incidents occurred close in time to when A.A. made the disclosure, and some of it occurred within the year before trial. The trial court ruled that the defense could not inquire into A.A.'s prior theft incidents with other

6

witnesses, stating that it had already made a ruling on this topic and that the defense was moving for reconsideration without providing any new information or law.

2.      Dr. Copeland's Testimony

Dr. Copeland testified that she is a child abuse pediatrician and performs sexual assault examinations but did not perform any examination in this case. Dr. Copeland stated that she was only giving general testimony.

The State asked Dr. Copeland questions about sexual assault examinations and handed Dr. Copeland an anatomical diagram picturing a pre-adolescent female's genitalia. The diagram depicted gloved hands performing gentle labia traction to show the layers of structures in the diagram. Dr. Copeland confirmed that the diagram would assist her in describing female anatomy and sexual assault examinations. The State moved to admit the diagram for illustrative purposes only, and the defense had no objection. The trial court admitted the diagram for illustrative purposes.

The State gave Dr. Copeland a laser pointer and asked Dr. Copeland to describe what parts would be examined in a sexual assault examination. Dr. Copeland pointed out several parts of the anatomy and described the types of injuries she would look for.

Dr. Copeland testified that only four to five percent of children who are sexually assaulted with penetration have findings in a sexual assault examination showing that penetration occurred. Dr. Copeland stated that normal exams are the norm, no matter how much penetration occurred or how many times it occurred. Also, minor injuries to the area heal very quickly because they are composed of mucosal surfaces, which were shown in the diagram.

7

Dr. Copeland also testified that it is physically possible for penile-vaginal sexual intercourse to occur between an adult male and 11-year-old female. In that hypothetical situation, the female could experience pain, external bruising, and bleeding. Also, burning while urinating is common because that type of penetration is between the labia, causing friction over the urethra.

3.      Closing Arguments, Verdict, and Sentencing

In closing arguments, the defense emphasized the lack of physical evidence and argued that the State could have performed a sexual assault examination which would have revealed physical evidence based on the age discrepancy and pain that A.A. described.

The jury found Torrence guilty on all counts and found that Torrence abused his position of trust in the commission of his offenses. *Id.* The trial court imposed an exceptional sentence of 360 months to life. *Id.*

Torrence filed a direct appeal raising numerous issues.[5] *Id*. at 1-2. This court affirmed his convictions. *Id*. at 27. Torrence's case mandated on February 5, 2021. Torrence then timely filed this PRP.

---

[5] Torrence argued on direct appeal that (1) the trial court violated his Sixth Amendment right to present a defense by excluding expert testimony, (2) several of his convictions constituted the same criminal conduct, (3) he received ineffective assistance of counsel because counsel failed to argue same criminal conduct at sentencing and an e-mail surprised counsel when it came up at trial, (4) the trial court erred by imposing a community custody condition, and (5) the trial court improperly imposed certain legal financial obligations. *Torrence*, slip op. at 1-2. Torrence also filed a statement of additional grounds claiming that A.A.'s sister would testify on his behalf and that A.A.'s mother's ex-husband abused her in front of A.A. *Id*. at 27. This court affirmed Torrence's convictions and remanded for the trial court to strike one legal financial obligation and amend another legal financial obligation. *Id*.

ANALYSIS

A.    PRP STANDARD OF REVIEW

To be entitled to relief in a PRP, the petitioner must show either (1) a constitutional error resulting in actual and substantial prejudice, or (2) "a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice." *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013). This court may (1) deny the petition, (2) grant the petition, or (3) transfer the petition to the superior court for a reference hearing. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013); *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015). If a petitioner fails to make a prima facia showing of actual and substantial prejudice or a fundamental defect, this court denies the PRP. *Yates*, 177 Wn.2d at 17-18.

B.    EVIDENTIARY RULINGS

Torrence argues that the trial court erred in several of its evidentiary rulings. We review evidentiary rulings and decisions to exclude evidence for an abuse of discretion. *State v. Garcia*, 179 Wn.2d 828, 846, 318 P.3d 266 (2014). "'A trial court abuses its discretion if its decision is manifestly unreasonable or based upon untenable grounds or reasons.'" *Id*. (internal quotation marks omitted) (quoting *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012)). To find that the trial court abused its discretion, we must be convinced that "'*no reasonable person* would take the view adopted by the trial court.'" *State v. Salgado-Mendoza*, 189 Wn.2d 420, 427, 403 P.3d 45 (2017) (emphasis in original) (internal quotation marks omitted) (quoting *State v. Perez-Cervantes*, 141 Wn.2d 468, 475, 6 P.3d 1160 (2000)). We may affirm the trial court's evidentiary

9

rulings on any grounds supported by the record and by law. *State v. Grier*, 168 Wn. App. 635, 644, 278 P.3d 225 (2012).

    1.     A.A.'s Prior Sexual Assault

Torrence argues that the trial court erred by excluding evidence of A.A.'s prior sexual assault.[6] We do not address this issue.

ER 103(a)(2) provides that

> [e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

>     . . . .

>     . . . In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

To obtain appellate review of a trial court's exclusion of evidence, there must be an offer of proof that is "sufficiently definite and comprehensive fairly to advise the trial court whether or not the proposed evidence is admissible." *State v. Song Wang*, 5 Wn. App. 2d 12, 27, 424 P.3d 1251 (2018), *review denied*, 192 Wn.2d 1012 (2019). An offer of proof serves to inform the court of the legal theory under which the evidence is admissible, inform the judge of the specific nature of the evidence, and create an adequate record for review. *State v. Ortuno-Perez*, 196 Wn. App.

---

[6] In his supplemental PRP, Torrence frames this issue and the exclusion of the theft incidents as the prosecution suppressing favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). A *Brady* violation occurs where the prosecution fails to disclose evidence that is favorable to an accused upon request. *Id.* at 87. However, Torrence makes clear in his supplemental reply brief that he is not arguing that a *Brady* violation occurred but instead is arguing that the trial court erred by excluding the evidence. Because Torrence does not identify any evidence that the prosecution failed to disclose to the defense, any attempt to argue a *Brady* violation fails.

771, 788-89 n.6, 385 P.3d 218 (2016). "An offer of proof is unnecessary only when 'the substance of the excluded evidence is apparent from the record.'" *Id*. at 789 n.6 (quoting *State v. Ray*, 116 Wn.2d 531, 539, 806 P.2d 1220 (1991)). The proponent of evidence bears the burden of establishing the evidence's admissibility. *Id*. at 784.

Here, the trial court conditionally granted the defense's motion to exclude evidence of A.A.'s prior sexual assault and stated that it did not have sufficient information to make a final ruling. The trial court stated that, if the defense wished to admit evidence of A.A.'s prior sexual assault, the defense needed to provide an offer of proof showing that a prior sexual assault occurred and explain why that evidence was relevant and significant.

The record does not show the defense provided an offer of proof. Because Torrence failed to provide an offer of proof with details about any prior sexual assault and reasons why evidence of that prior sexual assault was relevant and admissible, we decline review of Torrence's claim that the trial court erred by excluding evidence of A.A.'s prior sexual assault.

2.      A.A's Prior Theft Incidents

Torrence argues that the trial court erred by excluding evidence of A.A.'s prior theft incidents. Torrence argues that this exclusion violated his right to present a defense. We disagree.

We use a two-part test to determine whether a defendant's Sixth Amendment right to present a defense was violated. *State v. Jennings*, 199 Wn.2d 53, 58, 502 P.3d 1255 (2022). First, we review the evidentiary ruling for an abuse of discretion. *Id*. Second, we review de novo whether the evidentiary ruling violated the defendant's constitutional right to present a defense. *Id.* at 58-59.

11

### a. No abuse of discretion

ER 608(b) provides that

> [s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness.

ER 609 states in relevant part that

> [f]or the purpose of attacking the credibility of a witness in a criminal or civil case, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs the prejudice to the party against whom the evidence is offered, or (2) involved dishonesty or false statement, regardless of the punishment.
>
> . . . .
>
> . . . Evidence of juvenile adjudications is generally not admissible under this rule. The court may, however, in a criminal case allow evidence of a finding of guilt in a juvenile offense proceeding of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

ER 609(a), (d).

The trial court made a conditional ruling on the admissibility of evidence relating to A.A.'s theft incidents and stated that the defense would have to provide an offer of proof if it sought to admit any evidence regarding the prior theft incidents. Here, although Torrence did not make an offer of proof, the substance of A.A.'s prior theft incidents is apparent from the record. *See Ortuno-Perez*, 196 Wn. App. at 789 n.6. Therefore, we address the merits of this claim.

Even if the prior theft incidents may have been probative of A.A.'s truthfulness or untruthfulness, the record shows that the defense did not seek to cross-examine A.A. regarding prior theft incidents nor did the defense provide an offer of proof relating to any prior theft incidents. Instead, the defense sought the admission of A.A.'s prior theft incidents through other witnesses' testimony. Defense counsel argued that other family members' testimony about the prior theft incidents would be admissible under ER 608. But the prior theft incidents are specific instances of A.A.'s conduct for the purpose of attacking A.A.'s credibility, which cannot be proved by extrinsic evidence under ER 608(b). The other family members' testimony regarding the prior theft incidents would constitute extrinsic evidence. *See State v. Harris*, 97 Wn. App. 865, 872-73, 989 P.2d 553 (1999) (testimony from victim's friend was extrinsic evidence and therefore inadmissible under ER 608(b) to impeach victim), *review denied*, 140 Wn.2d 1017 (2000). And there is nothing in the record that shows A.A. was convicted or adjudicated for any of the prior theft incidents, so they are not admissible as prior convictions under ER 609. Thus, the trial court did not abuse its discretion by excluding testimony from family members about prior theft incidents.

b.      No violation of right to present a defense

"A criminal defendant's right to present a defense is guaranteed by both the federal and state constitutions." *Jennings*, 199 Wn.2d at 63. "However, the Constitution permits judges to 'exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.'" *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326-27, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006)). When the trial court excludes relevant evidence, "the reviewing

court must weigh the defendant's right to produce relevant evidence against the State's interest in limiting the prejudicial effects of that evidence to determine if excluding the evidence violates the defendant's constitutional rights." *Id.*

We use a three-part test to balance these competing interests. We ask:

(1) whether the excluded evidence was at least minimally relevant, (2) whether the evidence was "so prejudicial as to disrupt the fairness of the factfinding process" at trial, and, if so, (3) whether the State's interest in excluding the prejudicial evidence outweighs the defendant's need to present it.

*State v. Orn*, 197 Wn.2d 343, 353, 482 P.3d 913 (2021) (quoting *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983)). A trial court's exclusion of evidence does not violate a criminal defendant's right to present a defense if the defendant can still present relevant evidence supporting their central defense theory. *See State v. Arndt*, 194 Wn.2d 784, 814, 453 P.3d 696 (2019), *cert. denied*, 142 S. Ct. 726 (2021).

Here, A.A.'s prior theft incidents were relevant, as they were acts of dishonesty and could conceivably affect the jury's evaluation of A.A.'s credibility. But allowing A.A.'s family members to testify about her prior theft incidents after A.A. finished testifying would unfairly prejudice A.A. by making the jurors think A.A. was hiding information from them and give A.A. no chance to disclose the incidents on her own. Further, evidence of these prior theft incidents would cause A.A. to feel harassed or embarrassed as a result of disclosing her sexual abuse. On balance, the State's interest in protecting A.A. from unfair prejudice, undue harassment, and embarrassment outweighed the relevance of these prior unrelated theft incidents. *Orn*, 197 Wn.2d 353.

Further, Torrence was not prevented from arguing that A.A. fabricated the sexual abuse. The defense impeached A.A., identified inconsistencies in A.A.'s testimony, and solicited testimony from other witnesses regarding A.A.'s potential motivations for fabricating the abuse, including A.A.'s anger toward her mother and inter-family conflict resulting from A.A.'s behavioral problems. *Torrence*, slip op. at 10-11. The prior theft incidents might be specific examples of these behavioral problems, but Torrence still presented relevant evidence supporting his central defense theory. Therefore, the trial court did not violate Torrence's right to present a defense by excluding other family members' testimony regarding A.A.'s prior theft incidents.

### 3. Dr. Copeland's Testimony

Torrence argues that the trial court abused its discretion by allowing Dr. Copeland to testify. Torrence frames the issue as the trial court erring by "grant[ing] the [S]tate's motion in limine to use Dr. Copeland as an expert witness" but also makes arguments that specific parts of Dr. Copeland's testimony were improper. Opening Br. of Pet. at 22.

Expert witness testimony is admissible if the witness's scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact at issue in a case. ER 702. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403.

Here, the State filed a notice of expert testimony and sought to have Dr. Copeland testify regarding:

(1) the anatomy of the female external genital organ including the fact that it is possible for penile-vaginal sexual intercourse to occur between an adult male and an eleven-year-old female; (2) the fact that medical professionals rarely observe physical injury or physical signs from past sexual abuse of minor children and adolescents during medical examinations of the genitals, vagina, and/or anus; (3) statistics about this fact; and (4) the medical reasons for this fact.

CP (direct appeal record) at 44; Br. of Resp't Appx. B at 1. The State also notified the defense and the trial court that Dr. Copeland would testify regarding physical symptoms of sexual abuse resulting from penetration.

Here, Dr. Copeland's medical testimony regarding "normal" sexual assault examinations, along with the statistics and medical reasons why most sexual assault examinations are "normal," would help the jury critically evaluate the lack of physical evidence in this case. VRP (July 12, 2018) at 855. Further, Dr. Copeland's testimony regarding physical symptoms resulting from sexual abuse injuries would assist the jurors in evaluating A.A.'s testimony regarding the physical symptoms she experienced following the acts of abuse. Therefore, because Dr. Copeland's expert testimony would assist the jury in understanding the evidence or lack of evidence presented by the State and in determining several key facts at issue in the case, the trial court did not err by allowing the State to use Dr. Copeland as an expert witness. *See* ER 702.

Torrence argues that Dr. Copeland's testimony that "normal" sexual assault examinations are the norm was tantamount to rendering an opinion on A.A.'s credibility.[7] Dr. Copeland stated early in her testimony that she never examined A.A. and was only giving general testimony. Dr. Copeland's testimony regarding normal findings in sexual assault examinations, statistics about

---

[7] Torrence also states that the State's reference to Dr. Copeland's testimony in closing argument improperly bolstered A.A.'s credibility, but it is unclear how this statement relates to Torrence's claim that the trial court erred by admitting Dr. Copeland's testimony.

sexual assault examinations, and the medical reasons for sexual assault examinations typically being normal did not reference A.A. in any way and cannot reasonably be interpreted as expressing opinions regarding A.A.'s credibility. Therefore, the trial court did not err by allowing Dr. Copeland to testify regarding "normal" sexual assault examinations.

Torrence also argues that Dr. Copeland's testimony regarding the anatomical diagram and symptoms of sexual abuse was more prejudicial than probative and should have been excluded. Dr. Copeland referenced the anatomical diagram, which was admitted for illustrative purposes only, in explaining the reasons why sexual assault examinations typically have "normal" results and the reasons why an 11-year-old female might experience pain, external bruising, bleeding, and a burning sensation while urinating. As discussed above, this testimony was probative and relevant for the jury to determine several key facts at issues in the case.

On prejudice, Torrence contends that Dr. Copeland "conduct[ed] a virtual sexual assault examination" by referencing the anatomical diagram in her testimony, causing prejudice to Torrence. Opening Br. of Pet. at 22. But the record shows that Dr. Copeland simply explained the procedures in a sexual assault examination and the relevant anatomy, and used the anatomical diagram to assist her in her explanations. Torrence does not explain how Dr. Copeland's testimony about the diagram or symptoms of sexual abuse caused prejudice, let alone the "unfair prejudice" required to exclude evidence under ER 403. Therefore, we hold that the trial court did not err by allowing Dr. Copeland to testify regarding the anatomical diagram or symptoms of sexual abuse.

C.    INEFFECTIVE ASSISTANCE OF COUNSEL

Torrence argues that he received ineffective assistance of counsel because his counsel did not object to the use of the anatomical diagram for illustrative purposes. We disagree.

17

"The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel." *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). We review ineffective assistance of counsel claims de novo. *State v. Lopez*, 190 Wn.2d 104, 116-17, 410 P.3d 1117 (2018). To prevail on an ineffective assistance of counsel claim, a defendant must establish that counsel's performance was deficient and that counsel's deficient performance prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. A defendant must establish both prongs or their claim fails. *Id.* at 33.

Counsel's performance is deficient if it falls "'below an objective standard of reasonableness.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "There is a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant can overcome the presumption of reasonableness by showing that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Counsel's conduct is not deficient if it can be characterized as legitimate trial strategy or tactics. *Id*.

Counsel's decision of when to object is a "classic example of trial tactics." *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021). "A few or even several failures to object are not usually cause for finding that an attorney's conduct has fallen below the objective standard of conduct*." Id.* at 250. Instead, we presume "that the failure to object was the product of legitimate trial strategy or tactics, and the onus is on the defendant to rebut this presumption." *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). For an ineffective assistance of counsel

claim based on a failure to object, the defendant must show that an objection likely would have been sustained. *State v. Case*, 13 Wn. App. 2d 657, 673, 466 P.3d 799 (2020).

"'The use of demonstrative or illustrative evidence is to be favored and the trial court is given wide latitude in determining whether or not to admit demonstrative evidence.'" *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 426, 114 P.3d 607 (2005) (quoting *State v. Lord*, 117 Wn.2d 829, 855, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856 (1992)). Demonstrative or illustrative evidence is not substantive evidence. *See Lord*, 117 Wn.2d at 855. "Illustrative evidence is appropriate to aid the trier of fact in understanding other evidence, where the trier of fact is aware of the limits on the accuracy of the evidence." *Id.*

Here, both the State and the trial court stated that the anatomical diagram was offered and admitted for illustrative purposes, making the jury aware of the limits of the evidence. As discussed above, use of the diagram aided the jury in understanding other evidence. For these reasons, use of the anatomical diagram as illustrative evidence was appropriate. *See id.*

Torrence does not provide any argument that an objection to the anatomical diagram would have been sustained. Because Torrence has failed to show that an objection to the anatomical diagram would likely have been sustained, Torrence's ineffective assistance of counsel claim fails.

D.      PROSECUTORIAL MISCONDUCT

Torrence argues that the prosecutor committed misconduct by using the anatomical diagram and by soliciting evidence from Dr. Copeland regarding the anatomical diagram.[8,9] We disagree.

It is improper for a prosecutor to make arguments or introduce evidence calculated to inflame the passions or prejudices of the jury. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (lead opinion); *id.* at 716 (Chambers, J., concurring); *see State v. Fedoruk*, 184 Wn. App. 866, 890, 339 P.3d 233 (2014); *State v. Hecht*, 179 Wn. App. 497, 505, 319 P.3d 836 (2014). A person bringing a prosecutorial misconduct claim must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). In reviewing a claim of prosecutorial misconduct, we first determine whether the prosecutor's conduct was improper. *Id.* at 759. If the prosecutor's conduct was improper, we then determine whether the conduct was prejudicial. *Id.* at 760. If a defendant fails to object to improper conduct, the error is waived unless the defendant shows "that the misconduct was so

---

[8] Torrence's briefing references a PowerPoint presentation, but the record does not show the State used a PowerPoint presentation. Moreover, Torrence's briefing makes clear that his challenges relate to the use of an anatomical diagram for illustrative purposes.

[9] Torrence's brief from appointed counsel bookends the section discussing prosecutorial misconduct with statements that the trial court erred in admitting the anatomical diagram. This section of appointed counsel's brief includes some relevant principles of law regarding the admission of illustrative evidence. However, this section of appointed counsel's brief provides no argument that the anatomical diagram was improperly admitted for illustrative purposes. Instead, the substance of this section in appointed counsel's brief relates to Torrence's prosecutorial misconduct claim.

flagrant and ill intentioned that an instruction would not have cured the prejudice." *Glasmann*, 175 Wn.2d at 704.

### 1.     Anatomical Diagram

Torrence argues that use of the anatomical diagram as illustrative evidence constituted prosecutorial misconduct because the State used the diagram to inflame the passion and prejudice of the jury.[10] We disagree.

Here, the anatomical diagram was simply a drawing of a pre-pubescent female's anatomy, depicting gloved hands assisting in the display of relevant anatomy with labels for the various parts of the anatomy depicted. The diagram did not depict any injuries or other details that would inflame the jury's passion or prejudice. Further, the trial court had admitted the diagram for illustrative purposes, and the diagram was used during Dr. Copeland's testimony merely to assist her in describing the female anatomy and sexual assault examinations. Therefore, Torrence has failed to show that the prosecutor's use of the diagram was improper.

### 2.     Eliciting Testimony from Dr. Copeland

Torrence also argues that the prosecution erred by improperly eliciting testimony from Dr. Copeland. Specifically, Torrence takes issue with the prosecutor's questions asking Dr. Copeland

---

[10] Throughout his own briefing and the briefing from appointed counsel, Torrence appears to take issue with Dr. Copeland's use of the laser pointer and contends that he "was prejudiced by the emotional impact of the illustrative presentation drawn directly into focus by Dr. Copeland and the prosecutor[']s laser pointer." Pet. at 2. Torrence does not explain or provide argument explaining how the use of the laser pointer itself was improper or prejudicial. To the extent Torrence is claiming that the use of the laser pointer itself constituted prosecutorial misconduct, we hold that his claim fails. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

to point out parts of the female anatomy and which parts would be examined in a sexual assault exam, if Dr. Copeland was familiar with any studies regarding how often physical evidence of sexual abuse or penetration would leave physical evidence, whether it was possible for an adult male to have penile/vaginal sexual intercourse with an 11-year-old female, whether Dr. Copeland would expect any injury to occur in those circumstances, what kind of short term injury Dr. Copeland would expect if the penetration did not go past the hymen, how long such injuries would persist, what kind of pain Dr. Copeland would expect a person to experience during this sexual intercourse, and whether the person would experience bleeding or pain while urinating following the intercourse. Torrence argues that these questions were improper because the State used these questions "to portray a sexual crime had happened." Pet. at 9.

At the beginning of her testimony, Dr. Copeland explicitly stated that she had never examined A.A. and she was only giving general testimony. It is clear from Dr. Copeland's testimony that she was only testifying based on her studies and experience. Further, the line of questioning made clear that Dr. Copeland's testimony was about a hypothetical 11-year-old female, not A.A. We are not persuaded by Torrence's argument that the challenged questions were intended to mislead the jury into believing that Dr. Copeland was testifying that a sexual crime had occurred in this case or that they were improper. Therefore, we hold that Torrence's prosecutorial misconduct claim fails.

Torrence has not shown that he is entitled to relief from personal restraint. Therefore, we deny Torrence's PRP.

22

No. 56294-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Price, J.